IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCHINDLER ELEVATOR CORPORATION,<br>  20 Whippany Road<br>  Morristown, New Jersey 07960<br><br>           Plaintiff<br><br>v.<br><br>ROYAL EMBASSY OF SAUDI ARABIA,<br>  601 New Hampshire Ave, NW<br>  Washington, DC 20037<br><br>  <u>Serve on:</u><br>  Foreign Minister of the Kingdom<br>     of Saudi Arabia<br>  Foreign Ministry Headquarters<br>  Nasseriya Street<br>  Riyadh, Saudi Arabia 11544<br><br>           Defendant | Case No. _____ |

## COMPLAINT

### PARTIES AND JURISDICTION

1. Plaintiff Schindler Elevator Corporation ("SEC") is a corporation that is organized and existing under the laws of Delaware, with its U.S. headquarters in Morristown, New Jersey.

2. Defendant Royal Embassy of Saudi Arabia ("the Embassy") is the permanent diplomatic mission of the Kingdom of Saudi Arabia to the United States of America.

3. This Court has subject-matter jurisdiction under 28 U.S.C. §1330(a), because this is a lawsuit against a foreign state that is not entitled to (or has waived) immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a), and any other applicable international agreement.

4. This Court has personal jurisdiction over the Embassy pursuant to 28 U.S.C. § 1330(b) because there is subject-matter jurisdiction.

5. Venue is proper in this district under 28 U.S.C. § 1391(f).

## COUNT ONE
### (Breach of Contract)

6. The allegations of Paragraphs 1 through 5 are incorporated as if fully set forth herein.

7. On or about September 29, 1993, SEC entered into a valid, binding and enforceable Preventive Maintenance Agreement ("Agreement") with the Embassy, whereby SEC agreed to furnish the Embassy with preventive maintenance service on the two (2) Schindler Geared Passenger Elevators located at Royal Embassy of Saudi Arabia, Armed Forces Offices, 1001-30th Street, N.W., Washington, D.C. 20007 ("the Property"). A copy of the Agreement is attached hereto as **Exhibit 1.**

8. At all times pertinent hereto, the Kingdom of Saudi Arabia owned the Property.

9. In accordance with the Agreement, SEC was to be paid Seven Hundred Dollars ($700.00) per month, with price increases/adjustments to be made over time in accordance with the provisions in paragraph 10 of the Agreement. (See Exhibit 1 at ¶ 9 & 10).

10. The effective date of the Agreement was October 1, 1993 and the Agreement continued in full force and effect for a period of five (5) years until September 30, 1998 ("term"), and thereafter for successive five year renewal periods ("renewal term"). (See Exhibit 1 at ¶ 8). Pursuant to the terms of the Agreement, either SEC or the Embassy could terminate the Agreement at the end of the first five year period, or at the end of any subsequent five year renewal period, provided that either SEC or the Embassy give written notice of termination no later than ninety (90) days prior to the first expiration date or to any subsequent renewal expiration date ("term clause"). (See Id.).

11. The entirety of the Agreement was embodied in one writing (See Exhibit 1). This writing was signed by an individual acting at all times on behalf of the Embassy. (See Id.).

12. For the entirety of the first term and successive five (5)-year renewal terms thereafter, SEC provided the services described in the Agreement and the Embassy provided payment to SEC for those services.

13. However, on or about June 1, 2013, the Embassy stopped providing payment for the services provided by SEC.

14. On June 1, 2013 SEC remitted an invoice to the Embassy for payment, pursuant to the Agreement, which reflected the quarterly billing for the time period of June 1, 2013 – August 31, 2013. However, the Embassy withheld payment in the amount of Four Thousand, Nine Hundred and Sixty-Three Dollars and Eighty-Six Cents ($4,963.86), which is the amount reflected on the June 1, 2013 quarterly billing invoice. This amount was due and owing pursuant to the Agreement. (See all invoices attached collectively hereto as **Exhibit 2**).

15. On June 27, 2013, SEC remitted an invoice to the Embassy for payment for services provided pursuant to the Agreement. However, the Embassy withheld payment in the amount of Five Thousand, Six Hundred and Forty-Two Dollars ($5,642.00), which is the amount reflected on the June 27, 2013 invoice. This amount was due and owing pursuant to the Agreement. (See Exhibit 2).

16. On August 1, 2013, SEC remitted an invoice to The Embassy for payment for services provided on July 24, 2013 pursuant to the Agreement. However, the Embassy withheld payment in the amount of One Thousand, One Hundred and Eighty-One Dollars ($1,181.00), which is the amount reflected on the August 1, 2013 invoice. This amount was due and owing pursuant to the Agreement. (See Exhibit 2).

17. On August 23, 2013, SEC remitted an invoice to the Embassy for payment for services provided on August 13, 2013 pursuant to the Agreement. However, the Embassy withheld payment in the amount of Six Hundred and Thirty-Two Dollars and Twenty-Two Cents ($632.21), which is the amount reflected on the August 23, 2013 invoice. This amount was due and owing pursuant to the Agreement. (See Exhibit 2).

18. On September 1, 2013, SEC remitted an invoice to the Embassy for payment, pursuant to the Agreement, which reflected the quarterly billing for the time period of September 1, 2013 — November 30, 2013. However, the Embassy withheld payment in the amount of Four Thousand, Nine Hundred and Sixty Three Dollars and Eighty-Six Cents ($4,963.86), which is the amount reflected on the September 1, 2013 quarterly billing invoice. This amount was due and owing pursuant to the Agreement. (See Exhibit 2).

19. On September 12, 2013, SEC remitted an invoice to the Embassy for payment for services provided on August 29, 2013 pursuant to the Agreement. However, the Embassy withheld payment in the amount of Six Hundred and Twenty-Two Dollars and Twenty-One Cents ($622.21), which is the amount reflected on the September 12, 2013 invoice. This amount was due and owing pursuant to the Agreement. (See Exhibit 2).

20. On September 20, 2013, SEC remitted an invoice to the Embassy for payment for services provided on September 6, 2013 pursuant to the Agreement. However, the Embassy withheld payment in the amount of One Thousand and Two Dollars and

Eighty-Nine Cents ($1,002.89), which is the amount reflected on the September 20, 2013 invoice. This amount was due and owing pursuant to the Agreement. (See Exhibit 2).

On September 27, 2013, SEC remitted an invoice to the Embassy for payment for services provided on September 12, 2013 pursuant to the Agreement. However, the Embassy withheld payment in the amount of Five Hundred and Twenty-Eight Dollars and Fifty Cents ($528.50), which is the amount reflected on the September 27, 2013 invoice. This amount was due and owing pursuant to the Agreement. (See Exhibit 2).

21. On December 20, 2013, SEC remitted an invoice to The Embassy for payment, pursuant to the Agreement, which reflected the quarterly billing for the time period of December 1, 2013 — December 20, 2013. However, the Embassy withheld payment in the amount of One Thousand and Ninety-Five Dollars and Fifty Cents ($1,095.50), which is the amount reflected on the December 20, 2013 quarterly billing invoice. This amount was due and owing pursuant to the Agreement. (See Exhibit 2).

22. As of December 20, 2013, the Embassy was delinquent in paying numerous invoices remitted by SEC. Therefore, SEC suffered damages in the amount of Twenty-Thousand, Six Hundred and Thirty-Two Dollars and Thirty-Six Cents ($20,632.36) plus interest in the amount of One Thousand, Five Hundred and Fifty Dollars and Twenty-Six Cents ($1,550.26). (See Exhibit 2).

23. SEC made several attempts to contact the Embassy and inform them that they were delinquent in payment, but despite efforts to resolve the matter no payments

were received from the Embassy (Correspondence from SEC to the Embassy attached as **Exhibit 3**).

24. On October 25, 2013, SEC received notice from the Embassy that they intended to cancel their Agreement with SEC. SEC informed the Embassy that this cancellation notice violated the Term clause of the Agreement, which was in full force and effect until September 20, 2018 (see Exhibit 1 at ¶ 8 and Exhibit 3).

25. Pursuant to the Agreement, in the event of premature cancellation, the cancelling party is required to pay as liquidated damages one-half of the then current monthly agreement price times the number of months remaining between the premature cancellation and the Agreement termination date. (See Exhibit 1 at ¶ 8).

26. Accordingly SEC provided service and maintenance for the elevators through December 20, 2013 at which time the contract was cancelled in accordance with ¶ 11 of the Agreement.

27. Due to the failure of the Embassy to provide payment for the services provided by SEC, the Agreement was cancelled Four (4) years, Nine (9) months and Twelve (days) prior to the expiration of the subsequent Five (5)-year renewal period (See Exhibit 2). As such SEC suffered additional damages in the amount of Forty-Eight Thousand, Seven Hundred and Forty-One Dollars and Ninety-Five Cents ($48,741.95) (See Exhibit 2).

WHEREFORE, Plaintiff Schindler Elevator Corporation demands judgment against Defendant Royal Embassy of Saudi Arabia in the amount of Seventy Thousand,

Nine Hundred and Twenty-Four Dollars and Fifty-Seven Cents ($70,924.57), plus interests, costs and attorneys' fees.

## COUNT 2
### (Quantum Meruit)

28. The allegations of Paragraphs 1 through 28 are incorporated as if fully set forth herein.

29. SEC rendered valuable services to the Embassy with the intention of receiving from the Embassy payment for those services. The Embassy accepted those services, received the benefit of said services and knew that SEC expected to be paid for such services.

30. All services rendered by SEC to the Embassy were rendered under such Circumstances that the Embassy knew SEC expected to be paid. In fact, from on or about October 1, 1993 until on or about May 2013, SEC rendered such services to the Embassy and received payment from the Embassy for those services. As such, the Embassy was under reasonable notice that SEC, in performing their services, expected to be paid by the Embassy. However, on or about June 1, 2013, the Embassy no longer provided payment for said services. Furthermore, on many occasions, SEC informed the Embassy that they expected to be paid for the value of their services.

WHEREFORE, Plaintiff Schindler Elevator Corporation demands judgment against Defendant Royal Embassy of Saudi Arabia in the amount of amount of Twenty-Thousand, Six Hundred and Thirty-Two Dollars and Thirty-Six Cents ($20,632.36) plus

interest in the amount of One Thousand, Five Hundred and Fifty Dollars and Twenty-Six Cents ($1,550.26) as well as interests, costs and attorneys' fees.

_____
Eric M. Leppo
D.C. Bar No. 982694

Semmes, Bowen & Semmes
25 S. Charles Street, Suite 1400
Baltimore, Maryland 21201
(T)   410-539-5040
(F)   410-539-5223
eleppo@semmes.com

*Attorneys for Plaintiff*
*Schindler Elevator Corporation*

B1441425.DOCX